UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SOREN THOMPSON,

                        Plaintiff,

               -v.-

DAXOR CORPORATION and MICHAEL FELDSCHUH,

                        Defendants.

23 Civ. 8272 (KPF)

**ORDER**

---

KATHERINE POLK FAILLA, District Judge:

## BACKGROUND

Plaintiff Soren Thompson filed a complaint (the "Thompson Complaint") in this District on September 20, 2023, initiating the instant action (the "Federal Action"). (Dkt. #1). The Thompson Complaint brings claims for violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law (the "NYLL"); breach of express and implied contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; unjust enrichment; and retaliation against Defendants Daxor Corporation ("Daxor"), Plaintiff's former employer, and Michael Feldschuh (together with Daxor, "Defendants"), Daxor's President and CEO. (*Id.* ¶¶ 1, 4). The Thompson Complaint accuses Defendants of failing to compensate Thompson for the work he performed as Daxor's Vice President of Business Development, in accordance with both the terms of Thompson's employment agreement and verbal assurances from Feldschuh. (*Id.* ¶¶ 2-3).

Just over one month earlier, in August 2023, Daxor had initiated its own action against Thompson — captioned *Daxor Corporation* v. *Soren Thompson*, Case No. 2023-020679-CA-01 (the "Florida Action") — by filing a complaint (the "Daxor Complaint") in the Eleventh Judicial Circuit of Florida (the "Florida Circuit Court"). (*See* Dkt. #22-3 at 2). The Daxor Complaint brings claims against Thompson for declaratory relief, violations of the Florida Uniform Trade Secrets Act ("FUTSA"), and breach of contract. (*See* Dkt. #22-2 at 1). According to the Daxor Complaint, after Thompson resigned from Daxor in early 2023, he failed to repay "significant sums" of money that were advanced to him by Daxor. (Dkt. #21 ("Def. Ltr.") at 1). The Daxor Complaint also accuses Thompson of misappropriating Daxor's highly sensitive proprietary information and of breaching confidentiality agreements between the parties pertaining to the safekeeping of such information. (*Id.* at 1-2).

On December 27, 2023, Defendants filed a pre-motion letter on the docket of this action, the Federal Action, in anticipation of filing a motion to dismiss the Thompson Complaint. (Dkt. #14). The Court subsequently held a pre-motion conference on February 23, 2024, at which conference the Court was made aware of Thompson's pending motion to dismiss the Daxor Complaint, which motion had been filed in the Florida Action on October 27, 2023. (*See* February 23, 2024 Minute Entry; Dkt. #22 ("Pl. Ltr.") at 2). In view of the potential overlap between the anticipated decision of the Florida Circuit Court on Thompson's motion to dismiss the Daxor Complaint and the hypothetical decision of this Court on Defendants' anticipated motion to

dismiss the Thompson Complaint, as well as the fact that the Florida Action was ostensibly much further along than this one, the Court invited the parties to consider whether this action should be stayed pending the resolution of motion practice in the Florida Action.

Defendants, preferring to litigate the parties' dispute in their chosen forum (*i.e.*, before the Florida Circuit Court), filed a letter motion to stay the instant case on March 19, 2024. (*See generally* Def. Ltr.). In Defendants' view, a stay of the Federal Action pending motion practice in the Florida Action is the optimal path forward. (*See generally id.*). Defendants accuse Thompson of filing the Federal Action in an effort to "'forum shop' for a 'better venue'" for the parties' dispute, given that "there [was] already a pre-existing lawsuit between the parties in the State of Florida" — "where [Thompson] resided during his employment, and where a substantial part of his employment duties were performed prior to the end of his employment" — when he elected to file the Thompson Complaint in this Court. (*Id.* at 2).

In his March 29, 2024 response to Defendants' motion to stay, Thompson claimed that it was not he, but Daxor, who had "engaged in bad faith pre-emptive forum shopping." (Pl. Ltr. 2). According to Thompson, Daxor initiated the Florida Action back in August 2023 — "without any advance notice to [Thompson]" — amidst "pre-litigation settlement discussions [between the parties] … during which potential litigation in New York was unambiguously communicated as the alternative to a negotiated settlement." (*Id.*). In Thompson's view, his desired forum (*i.e.*, this District) "is the only

3

appropriate forum for the parties' dispute; staying the action here would be improper, prejudicial to [Thompson], and would serve only to enable Defendants ... to further delay the swift administration of justice due to [Thompson]." (*Id.* at 1).

## APPLICABLE LAW

The so-called "first-filed" rule instructs courts that, "where there are two competing lawsuits, the first suit should have priority." *Emp'rs Ins. of Wausau* v. *Fox Entm't Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (alterations adopted) (internal quotation marks omitted). This rule, however, is a rule of deference among federal courts. *See* 15 CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. JURIS. § 3854 (4th ed.), Westlaw (February 2024 Update); *Chartis Seguros Mexico, S.A. de C.V.* v. *HLI Rail & Rigging, LLC*, No. 11 Civ. 3238 (JSR), 2011 WL 13261585, at *2 (S.D.N.Y. Nov. 3, 2011). Alternatively, where two competing lawsuits are split across a federal and a state court, whether "[the] federal court should defer to [the] concurrent action pending in state court raises an issue of abstention." *Id.*

In the seminal case of *Colorado River Water Conservation District* v. *United States*, the Supreme Court set forth what is now referred to as the *Colorado River* abstention doctrine. 424 U.S. 800 (1976). The *Colorado River* Court held that, "in situations involving the contemporaneous exercise of concurrent jurisdiction [by a federal and state court],' [the] federal court, in 'exceptional' circumstances, may abstain from exercising jurisdiction[.]" *Dalzell Mgmt. Co.* v. *Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 596 (S.D.N.Y. 2013)

4

(quoting *Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817-18 (1976)).  *Colorado River* abstention is reserved for those situations wherein "parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." *Dalzell*, 923 F. Supp. 2d at 596 (quoting *Colorado River*, 424 U.S. at 817).

In *Kamerman* v. *Steinberg*, 681 F. Supp. 206 (S.D.N.Y. 1988), a sister court in this District identified six factors that courts should consider in determining whether to defer to a parallel litigation brought in state court in accordance with *Colorado River*.  These factors are:

> [i]   the order in which the courts assumed jurisdiction over property relating to the subject matter of the case,
>
> [ii]  the inconvenience of the federal forum,
>
> [iii] the desirability of avoiding piecemeal or duplicative litigation,
>
> [iv]  the order in which the courts obtained jurisdiction,
>
> [v]   whether federal or state law governs, and
>
> [iv]  whether the state forum would be adequate to protect the plaintiffs' rights.

*Id.* at 213.  Thompson invokes *Kamerman* in his response to Defendants' letter motion, claiming that the above factors militate against the Court's grant of a stay in this action.  (*See* Pl. Ltr. 4-5).

Importantly, a finding that concurrent federal and state proceedings are "parallel" is a prerequisite to abstaining under *Colorado River*. *Dittmer* v. *Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998).  "Federal and state proceedings

5

are 'concurrent' or 'parallel' for purposes of abstention when the ... proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh* v. *Karp*, 108 F.3d 17, 22 (2d Cir. 1997); *see also Shields* v. *Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) ("[P]arallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." (internal quotation marks omitted)).

Here, the competing actions are not "parallel" for the purposes of the *Colorado River* abstention doctrine. *Dalzell*, 923 F. Supp. 2d at 598. That is, while both the Florida Action and the Federal Action concern, *inter alia*, the proper interpretation of the various agreements entered into by the parties and the circumstances surrounding Thompson's departure from Daxor, the Florida Action revolves around Thompson's alleged misappropriation of Daxor's funds and trade secrets, while the Federal Action targets Daxor's alleged failure to appropriately compensate Thompson. Accordingly, the resolution of the Florida Action is unlikely to dispose of "all claims" in the Federal Action, and the actions are not sufficiently "parallel" to invoke the abstention doctrine. *Shields*, 891 F. Supp. 2d at 577. The *Kamerman* factors are thus not the proper standard with which to evaluate the instant motion.

Importantly, however, "where a Court may not abstain under *Colorado River*, it may [nonetheless] ... 'stay proceedings in the action before it[,] pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views.'" *Chartis*

6

*Seguros*, 2011 WL 13261585, at *2 (alterations adopted) (quoting *Giulini* v. *Blessing*, 654 F.2d 189, 193 (2d Cir. 1981)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012) (internal quotation marks omitted). The party seeking a stay "bears the burden of establishing its need." *Clinton* v. *Jones*, 520 U.S. 681, 708 (1997).

In deciding whether to stay a federal proceeding that implicates a concurrent state proceeding in line with *Chartis Seguros* — *i.e.*, where *Colorado River* abstention is inapplicable — a court considers seven factors:

> [i] considerations of comity;
>
> [ii] promotion of judicial efficiency;
>
> [iii] adequacy and extent of relief available in the alternative forum;
>
> [iv] identity of parties and issues in both actions;
>
> [v] likelihood of prompt disposition in the alternative forum;
>
> [vi] convenience of the parties, counsel[,] and witnesses; and
>
> [vii] possibility of prejudice to a party as the result of the stay.

*De Carvalhosa* v. *Lindgren*, 546 F. Supp. 228, 230 (S.D.N.Y. 1982) (quoting *Universal Gypsum of Ga., Inc.* v. *Am. Cyanamid Co.*, 390 F. Supp. 824, 827 (S.D.N.Y. 1975)). Considering each of the *Lindgren* factors in turn, the Court finds that, at a minimum, a brief stay of the Federal Action is warranted.

**ANALYSIS**

The first factor, "considerations of comity," *Lindgren*, 546 F. Supp. at 230, does not counsel either for or against a stay of this action. To the extent the claims in the Federal and Florida Actions are covered by a New York choice-of-law provision,[1] "[t]heir resolution will be controlled by the applicable precedents of New York [] law whether the trial is had in this courthouse or [in Florida]." *Universal Gypsum*, 390 F. Supp. at 827. Comity really only comes into play to the extent that the parties bring their claims as counterclaims in the respective opposing actions, which could require either (i) the Florida Circuit Court to determine matters of federal law (*i.e.*, Thompson's FLSA claims in the Federal Action), or (ii) this Court to determine matters of Florida law (*i.e.*, Daxor's FUTSA claim in the Florida Action). Any threat to comity resulting from the grant or denial of Defendants' motion thus stands in equipoise.

The second factor, the "promotion of judicial efficiency," *Lindgren*, 546 F. Supp. at 230, counsels in support of a stay. While the Federal Action and the Florida Action are not "parallel" for the purposes of the *Colorado River* abstention doctrine, the Florida Circuit Court's determination of certain claims in the Florida Action would very likely inform the determination of certain claims in this action. (*See* Def. Ltr. 4 ("It would be judicially inefficient to have the New York federal court decide a Motion to Dismiss at the same time that

---

[1] On account of the presence of a New York choice-of-law provision in an "Options Agreement" entered into by the parties, both parties appear to be under the impression that New York law applies to a substantial majority of the parties' state-law claims. (*See* Pl. Ltr. 3; Def. Ltr. 4).

the Florida Circuit Court will be deciding in essence the same Motion to Dismiss in the Florida [Action].")).  Specifically, the Florida Circuit Court's resolution of Daxor's breach of contract claim would likely inform the various contract claims before this Court; similarly, the Florida Circuit Court's resolution of the FUTSA claim would likely inform the retaliation claim before this Court (which alleges that Daxor's filing of the Daxor Complaint constitutes retaliation).  *See Chartis Seguros*, 2011 WL 13261585, at *2 (authorizing stay where "the [state court] action w[ould] likely resolve many of the issues presented in th[e] [federal court] case").[2]

As to the third factor, "adequacy and extent of relief available in the alternative forum," *Lindgren*, 546 F. Supp. at 230, the Court finds that the adjudication of this dispute in Florida state court would limit neither the adequacy nor the extent of relief available to the parties.  As an initial matter, adjudication of the parties' state-law claims by the Florida Court does not change the law that applies to them, to the extent such claims are governed by a choice-of-law provision; both fora would enforce any such provision.  *See Punzi* v. *Shaker Adver. Agency, Inc.*, 601 So.2d 599, 600 (Fla. Dist. Ct. App.

---

[2]    The Court takes note of Plaintiff's allegation that some agreement between the parties contains a controlling forum-selection clause that mandates adjudication of this dispute in New York, which allegation, if true, is relevant to the question of judicial efficiency. (Pl. Ltr. 1).  Defendants believe, however, that such agreement and such clause are "non-existent." (Def. Ltr. 3).  The Court expects that Defendants, to the extent they are in possession of such agreement, would have already produced (or will promptly produce) it to Plaintiff and put it before the Florida Circuit Court for that court's adjudication of the applicability of such clause to the instant dispute.  Regardless, this Court cannot divest the Florida Circuit Court of its jurisdiction over this dispute on the basis of a forum-selection provision of unknown scope in an unidentified agreement, the existence of which one party adamantly refutes.

1992) (indicating that Florida courts will generally enforce a choice-of-law provision in a contract unless the law of the chosen forum contravenes strong public policy). The Florida Circuit Court is eminently capable of applying New York law to such claims, just as this Court would. Moreover, should Thompson elect to bring his FLSA claims in the form of counterclaims in the Florida Action, the Court is confident that the Florida Circuit Court could also appropriately adjudicate such charges. *See* 29 U.S.C. § 216(b) (providing that a FLSA action "may be maintained … in any … Federal or State court of competent jurisdiction").

Further, in the event that Thompson brings any of his claims in this action as counterclaims in the Florida Action, the Court has no reason to believe (contrary to Thompson's assertions) that the Florida Circuit Court could not exercise personal jurisdiction over Defendant Feldschuh. While the Court leaves any determination of personal jurisdiction up to the Florida Circuit Court, it notes that various provisions of Florida's long-arm statute appear to cover Feldschuh's interactions with Thompson. *See* FLA. STAT. § 48.193 (2023) (identifying "conducting, engaging in, or carrying on a business or business venture in [Florida]"; "[c]ommitting a tortious act within [Florida]"; and "[b]reaching a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]," *inter alia*, as grounds for personal jurisdiction by a Florida state court).

Conversely, to the extent Daxor was required to bring its claims as counterclaims in the Federal Action, there is no guarantee that this Court

could or would exercise subject matter jurisdiction over such claims. Importantly, this Court's jurisdiction is more narrowly circumscribed than that of the Florida Circuit Court.  Daxor's claims neither arise under federal law for the purposes of Section 1331 of Title 28 of the United States Code, nor entail diversity of citizenship under Section 1332.  Accordingly, such claims could be heard in this Court only if they satisfy the requirements for supplemental jurisdiction pursuant to Section 1367.  And supplemental jurisdiction could be defeated through, *e.g.*, (i) a finding that Daxor's FUTSA claim for trade secret misappropriation does not arise out of the same "common nucleus of fact" as Thompson's FLSA claim for unpaid wages (the only claim over which this Court has original jurisdiction) for the purposes of Section 1367(a), *see Briarpatch Ltd., L.P.* v. *Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004); (ii) a finding that Daxor's claim under FUTSA "substantially predominate[s]" over Thompson's FLSA claim for the purposes of Section 1367(c)(2); or (iii) the dismissal of Thompson's FLSA claim pursuant to Section 1367(c)(3).

Fourth, while the "identity of parties and issues in both actions" is not sufficient for the purposes of invoking the *Colorado River* abstention doctrine, it is sufficient to counsel in favor of a stay of this action.  Here, the parties in both actions are the same, with the lone exception of Feldschuh.  (*See* Pl. Ltr. 5-6).  What is more, with respect to identity of claims, the Court has already explained the similarities among the parties' claims and the manner in which the resolution of some claims will likely occasion the resolution of

others. The parties and issues in both actions are thus sufficiently similar to support a stay.

The fifth factor, the "likelihood of prompt disposition in the alternative forum," *Lindgren*, 546 F. Supp. at 230, unequivocally supports a stay. Thompson's motion to dismiss the Daxor Complaint was filed more than five months ago in the Florida Action, and a hearing on the motion is scheduled for May 10, 2024. (Pl. Ltr. 2; Def. Ltr. 3). To the extent this Court's refusal to stay this action would result in the entire dispute being transferred to this Court (*see* Pl. Ltr. 5), the progression of Defendants' claims through litigation in the Florida Action would be rendered a nullity, and the parties would be forced to re-brief Thompson's motion to dismiss such claims. It seems obvious that Defendants' claims should not be uprooted from the Florida Action in the face of a fully briefed motion.[3]

The sixth factor — the "convenience of the parties, counsel[,] and witnesses," *Lindgren*, 546 F. Supp. at 230 — does not strongly favor one forum over the other. While the Court accepts that "it would be inconvenient and expensive for [Thompson] to litigate his claims in Florida, given that he is an individual with no existing ties to Florida" (Pl. Ltr. 6), Florida is the place

---

[3]   Plaintiff emphasizes the fact that the Florida Circuit Court "did not take any action" (*i.e.*, issue any orders) in the State Action between Plaintiff's filing of his motion to dismiss the Daxor Complaint in late October and January 31, 2024. (Pl. Ltr. 5). However, this Court does not discount the very real possibility that, during that time, the Florida Circuit Court took Plaintiff's motion to dismiss the Daxor Complaint under consideration and/or expended significant time on the matter in the form of administration, research, planning, or other work that is not apparent from a review of the docket.

12

"where [Thompson] resided during his employment, and where a substantial part of his employment duties were performed prior to the end of his employment." (Def. Ltr. 2). For this reason, the witnesses to the events underlying these actions (*e.g.*, Daxor's payroll-related personnel) are likely to be located in Florida, in addition to relevant discovery materials, making litigation of the actions in Florida ostensibly convenient to both counsel and witnesses. (*Id.* at 5).

As to the seventh factor, the "possibility of prejudice to a party as the result of the stay," *Lindgren*, 546 F. Supp. at 230, the Court finds that Thompson is not prejudiced by litigation of the instant dispute in Florida. To the extent Thompson choses to bring his claims in this action as counterclaims in the Florida Action, the Court wholeheartedly rejects his suggestion that the Florida Circuit Court is so "unknowledgeable about . . . New York Labor Law" as to be an inadequate forum for adjudicating such claims. (Pl. Ltr. 6).

Having taken each of the seven *Lindgren* factors under consideration, the Court concludes that, collectively, they weigh in favor of a stay of the Federal Action, at least until the Florida Circuit Court resolves Thompson's motion to dismiss the Daxor Complaint. To paraphrase a decision from a sister court in this District:

> [A]lthough there is no doubt that [Thompson] would prefer to litigate this controversy only in New York, that is no longer a viable option. This Court has only two options: to stay this action in favor of the [Florida] Action or to allow both actions to proceed. The waste of judicial resources resulting from concurrent proceedings in the two forums is both substantial and needless, and clearly should be avoided if at all possible.

13

*Companion Life Ins. Co.* v. *Matthews*, 547 F. Supp. 836, 841-42 (S.D.N.Y. 1982).

## CONCLUSION

The Court STAYS this action pending the Florida Circuit Court's resolution of Thompson's motion to dismiss the Daxor Complaint. Plaintiff is hereby ORDERED to file an update on the status of the Florida Action on or before **July 17, 2024**, or within ten days of the resolution of his motion to dismiss the Daxor Complaint, whichever is sooner.

SO ORDERED.

Dated:  April 5, 2024
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge